UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

JAN 2 4 2003

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES OF AMERICA )
)
v. )
)
BELINDA JOHNSON )

No. 02 CR 944

Judge Milton I. Shadur

JAN 2 7 2003

## PLEA AGREEMENT

This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and the defendant, BELINDA JOHNSON, and her attorney, ELLEN DOMPH, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure.

This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 02 CR 944.

This Plea Agreement concerns criminal liability only, and nothing herein shall limit or in any way waive or release any administrative or judicial civil claim, demand or cause of action, whatsoever, of the United States or its agencies. Moreover, this Agreement is limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities except as expressly set forth in this Agreement.

By this Plea Agreement, PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, and the defendant,

BELINDA JOHNSON, and her attorney, ELLEN DOMPH, have agreed upon the following:

1.    Defendant acknowledges that she has been charged in Count Five of the indictment in this case with a violation of Title 18, United States Code, Section 1028(a)(1).

2.    Defendant has read the charge against her contained in Count Five of the indictment, and this charge has been fully explained to her by her attorney.

3.    Defendant fully understands the nature and elements of the crime with which she has been charged.

4.    Defendant will enter a voluntary plea of guilty to Count Five of the indictment in this case.

5.    Defendant will plead guilty because she is in fact guilty of the charge contained in Count Five of the indictment.   In pleading guilty, defendant admits the following facts and that those facts establish her guilt beyond a reasonable doubt:

Defendant admits that on or about March 6, 2000, in the Northern District of Illinois, defendant did knowingly and without authority produce an identification document and a false identification document, as those terms are defined in Title 18, United States Code, Section 1028, to wit: a false driver's license, knowing that such document was produced without lawful authority, moreover, such production affected interstate commerce, in violation of Title 18, United States Code, Section 1028(a)(1).

2

Specifically, defendant admits that she participated in the production of a false driver's license in order to purchase merchandise at Target in Schaumburg, Illinois. Target was a store that purchased merchandise and other items in interstate commerce and was a publicly traded corporation. The driver's license was false in that the name on the license was not the defendant's, was not issued under the authority of a governmental entity, and did appear as if it were issued by the State of Wisconsin.

Defendant further admits that, in addition to the false driver's license, she also presented a check in the name falsely listed on the driver's license. The check had a valid bank routing number but a fraudulent checking account number. Defendant admits that she used the check and driver's license to obtain merchandise from Targets in the amount of $286.27.

6. The defendant also acknowledges, for the purposes of computing her sentence under the U.S. Sentencing Guidelines, that she engaged in the following conduct, which constitutes relevant conduct pursuant to guideline 1B1.3:

Defendant admits that from approximately August 21, 1999 until and including July 25, 2002, defendant purchased over $43,000 worth of merchandise from numerous retail stores using false names, identifications, and paying with checks that were fraudulent in that the bank routing number was accurate but the checking account number was not to a real account. These retail stores included

3

Target, Marshall Field's, Bebe, Victoria's Secret, K-Mart, Walgreens, and Abercrombie and Fitch in Illinois. Defendant further admits that, in connection with each instance she did knowingly and without authority participate in the production of an identification document and false identification document, as those terms are defined in Title 18 United States Code, Section 1028, to wit: a false driver's license, knowing that such document was produced without lawful authority. Moreover, the production and use of such documents affected interstate commerce.

Defendant admits that approximately 29 of her fraudulent purchases from the above retailers were completed using different victim's names, who were real individuals. Defendant admits that Certegy, Inc. insured the above retail stores, except Targets and Marshall Field's, which were self-insured, for losses due to fraudulent checks. Defendant further admits that Certegy, Inc. suffered financial loss due to its payment of claims resulting from defendant's acts described above.

Defendant admits that she and GENELL LONIE manufactured the fraudulent checks that she used and provided them to the co-defendants listed below. Defendant further admits that in addition to LONIE, TIJUANA LEONARD, SABRINA JUNIOR, KEISHA BIBBS, ROBIN HATCHETT, and SHIKILA BLOUNT were also involved with her in the scheme to purchase merchandise using false identifications and checks.

4

7. For purposes of applying the guidelines promulgated by the United States Sentencing Commission pursuant to Title 28, United States Code, Section 994, the parties agree that the 2002 United States Sentencing Commission Guidelines Manual applies. The parties further agree on the following points:

(a) The base offense level for defendant's offense is level 6 pursuant to Guideline §2B1.1(a).

(b) The offense level must be adjusted upward by 6 levels because the loss from the offense of conviction and relevant conduct was between $30,000 and $70,000, pursuant to Guideline §2B1.1(b)(1)(D).

(c) The offense level must be increased upward by 2 levels because the offense involved 10-50 victims, pursuant to Guideline § 2B1.1(b)(2)(A).

(d) The offense level must be increased upward by 3 levels because the defendant was a manager or supervisor of criminal activity that involved five or more participants or was otherwise extensive, pursuant to Guideline § 3B1.1(b).

(e) Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for her criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if the defendant continues to accept responsibility for her actions, within the meaning of

5

Guideline §3E1.1, a two-level reduction in the offense level is appropriate.

(f)   Defendant has provided timely complete information concerning her own involvement in the offense, notified the government timely of her intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently, within the meaning of Guideline §3E1.1(b); an additional one-point reduction in the offense level is therefore appropriate, provided the court determines the offense level to be 16 or greater prior to the operation of Guideline § 3E1.1(a).

(g)   On or about June 6, 1990, the defendant was convicted for Theft in Crown Point, Indiana. The defendant received a sentence of 18 months imprisonment. Pursuant to Guideline §4A1.1(a), this conviction results in three criminal history points;

(h)   On or about January 30, 1995, the defendant was convicted for Forgery in Oak Brook, Illinois. The defendant received a sentence of four years imprisonment.   Pursuant to Guideline §4A1.1(a), this conviction results in three criminal history points;

(i) On or about March 4, 1993, the defendant was convicted for Retail Theft in Skokie, Illinois. The defendant received a sentence of four years imprisonment.   Pursuant to Guideline

§4A1.1(a), this conviction results in three criminal history points;

(j) On or about November 5, 1993, the defendant was convicted for Auto Theft in Indiana. The defendant received a sentence of two years imprisonment. Pursuant to Guideline §4A1.1(a), this conviction results in three criminal history points;

(k) On or about August 14, 1997, the defendant was convicted for Attempt Theft in Chicago, Illinois. The defendant received a sentence of 18 months conditional discharge. Pursuant to Guideline §4A1.1(c), this conviction results in one criminal history point:

(l) Based on the facts known to the government and stipulated in subparagraphs (g), (h), (i), (j),and (k) above the defendant has 13 criminal history points and the defendant's criminal history category is VI; and

(m) The defendant and her attorney and the government acknowledge that the above calculations are preliminary in nature and based on facts known to the government as of the time of this Agreement. The defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Sentencing Guidelines calculation. Accordingly, the validity of this Agreement is not

7

contingent upon the probation officer's or the Court's concurrence with the above calculations.

7.     Errors in calculations or interpretation of any of the guidelines may be corrected by either party prior to sentencing. The parties may correct these errors or misinterpretations either by stipulation or by a statement to the probation office and/or court setting forth the disagreement as to the correct guidelines and their application.  The validity of this Agreement will not be affected by such corrections, and the defendant shall not have a right to withdraw her plea on the basis of such corrections.

8.     Defendant understands the charge to which she will plead guilty carries a maximum penalty of 15 years imprisonment, a maximum fine of $250,000, or twice the gross gain or loss, whichever is greater, restitution, and a term of supervised release of at least two but not more than three years, which the Court may specify.

9.     The defendant understands that in accord with federal law, Title 18, United States Code, Section 3013, upon entry of judgment of conviction, the defendant will be assessed $100 on the count to which she has pled guilty, in addition to any other penalty imposed.   The defendant agrees to pay the special assessment of $100 at the time of sentencing with a check or money order made payable to the Clerk of the U. S. District Court.

8

10.  Defendant understands that by pleading guilty she surrenders certain rights, including the following:

(a)  If defendant persisted in a plea of not guilty to the charge against her, she would have the right to a public and speedy trial. The trial could be either a jury trial or a trial by the judge sitting without a jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

(b)  If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random. Defendant and her attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising so-called peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that defendant is presumed innocent, and that it could not convict her unless, after hearing all the evidence, it was persuaded of defendant's guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately.

(c)  If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded of defendant's guilt beyond a reasonable doubt.

9

(d) At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and her attorney would be able to cross-examine them. In turn, defendant could present witnesses and other evidence in her own behalf. If the witnesses for defendant would not appear voluntarily, she could require their attendance through the subpoena power of the court.

(e) At a trial, defendant would have a privilege against self-incrimination so that she could decline to testify, and no inference of guilt could be drawn from her refusal to testify. If defendant desired to do so, she could testify in her own behalf.

11. Defendant understands that by pleading guilty she is waiving all the rights set forth in the prior paragraph. Defendant's attorney has explained those rights to her, and the consequences of her waiver of those rights. Defendant further understands she is waiving all appellate issues that might have been available if she had exercised her right to trial.

12. Defendant understands that the indictment and this Plea Agreement are matters of public record and may be disclosed to any party.

13. Defendant understands that the United States Attorney's Office will fully apprise the District Court and the United States Probation Office of the nature, scope and extent of defendant's conduct regarding the charges against her, and related matters,

10

including all matters in aggravation and mitigation relevant to the issue of sentencing.

14. Regarding restitution, the parties acknowledge that the amount of restitution owed by the defendant is $43,366.73 and that pursuant to Title 18, United States Code, Section 3663A the Court must order defendant to make restitution in this amount, minus any credit for funds repaid prior to sentencing. Specifically, the parties acknowledge that the restitution owed by defendant is to be paid as follows: 1) $28,527.39 to Certegy, Inc., 11601 North Roosevelt Blvd., St. Petersburg, FL 33716 and 2) $14,839.34 to Target Corporation,111 North State, Chicago, IL 60602 attn/Retail Security.

15. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and, subject to the limitations of the sentencing guidelines, may impose the maximum penalties as set forth in paragraph 8 above. The defendant further acknowledges that if the court does not accept the sentencing recommendation of the parties, the defendant will have no right to withdraw her guilty plea.

16. The indictment charges that defendant knowingly engaged in conduct in violation of Title 18, United States Code, Section 1028(a)(1), she subjected to forfeiture to the United States, pursuant to Title 18, United States Code, Section 982(a)(2)(B), any property used or intended to be used to commit and to promote the

11

commission of the charged offenses, including but not limited to the following:

> (a)   seized 2001 Totota Sequioa, Vin number 5TDBT44A71S021534; and
> (b)   seized Jewelry

By entry of a guilty plea to Count Five of the indictment, the defendant understands that any property, described above, as a result of these violations are subject to forfeiture.

Defendant agrees to the entry of a preliminary order of forfeiture relinquishing any and all right, title, and interest she has in the above property so that these items may be disposed of according to law. ~~Defendant is unaware of any third party who has an ownership interest or claim to the property subject to forfeiture and~~ *Defendant* will cooperate with the United States during the ancillary stages of any forfeiture proceedings to defeat the claim of a third party in the event a third party files a claim.

Defendant understands that forfeiture of this property shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or other penalty the Court may impose upon the defendant in addition to the forfeiture judgment.

17.   Defendant and her attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

18.   Defendant agrees this Plea Agreement shall be filed and become a part of the record in this case.

12

19. The government will recommend a sentence within the applicable guideline range.

20. Should the judge refuse to accept the defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound thereto.

21. Defendant acknowledges that she has read this Agreement and carefully reviewed each provision with her attorney. Defendant further acknowledges that she understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: _January 24, 2003_

_____
PATRICK J. FITZGERALD
United States Attorney

_____
JEFFREY M. CRAMER
Assistant United States Attorney

_____
BELINDA JOHNSON
Defendant

_____
ELLEN DOMPH
Attorney for Defendant

13