**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

FILED
APR 1 6 2003
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **No.02 CR 944-5** |
| | ) | **Judge Milton Shadur** |
| **BELINDA JOHNSON,** | ) | |
| | ) | |
| **Defendant.** | ) | |

DOCKETED
APR 2 1 2003

**CERTIFICATE OF SERVICE**

To: Jeffrey H. Cramer
Assistant U.S. Attorney
219 S. Dearborn St.
Chicago IL. 60604

Barbara Bowman, U.S. Probation
55 E. Monroe St.
Suite 1500
Chicago, IL 60602

Please be advised that on April 14, 2003 I caused to be ***hand delivered/*** mailed to the above mentioned persons **BELINDA JOHNSON'S SENTENCING MEMORANDUM.**

Ellen R. Domph

Ellen R. Domph
Attorney for Defendant
53 W. Jackson Blvd., #1515
Chicago, IL 60604
312-922-2525

68

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

FILED
APR 1 6 2003
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **vs.** | ) | **No. 02 CR 944-5** |
| | ) | **Judge Milton Shadur** |
| **BELINDA JOHNSON** | ) | |
| | ) | |
| **Defendant.** | ) | |

## BELINDA JOHNSON'S SENTENCING MEMORANDUM

DOCKETED
APR 2 1 2003

Now comes BELINDA JOHNSON, by her attorney, Ellen R. Domph and submits the following sentencing memorandum:

A. ***Objections to the Presentence Investigation Report (PSI)***

1. At page 1 line 10 the PSI states that Martin Ashman set no bond for Ms. Johnson. Actually the case was heard by Magistrate Arlander Keys, not Martin Ashman.

2. Criminal History

a. The PSI indicates several arrests and/or convictions that are not Ms. Johnson's. They belong to a "Diane Tyner" who is not Ms. Johnson nor is that name an alias that she has used. The errors are as follows:

1. At page 6-7 at lines 176-182 the probation officer (PO) attributes a 1981 East Chicago, Indiana conversion offense to Ms. Johnson despite that fact that the defendant's name was Diane Tyner. The documentation concerning this offense indicate that Ms. Tyner's birth date is January 19, 1954; her height and weight are 5' 5" and 100 pounds; and her social security number is 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. Ms. Johnson's birth date is February 15, 1958; her height 5' and her



weight is more than 100 pounds; her social security number is 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. Most important, however, is that the photograph accompanying the criminal history documentation reveals that Diane Tyner bears no resemblance to Ms. Johnson. (See Diane Tyner's criminal history sheet from East Chicago, Indiana city court attached as Exhibit A and Lake County, Indiana Sheriff's vital statistics, photograph and arrest sheet of Diane Tyner attached as Exhibit B).[1]

2. At page 10 lines 247-249 the PO erroneously attributes 2 criminal history points to Ms. Johnson based on a 1994 conviction for shoplifting/conversion. First, the criminal history documentation reveals that this conviction belongs to Diane Tyner. (See Exhibit A). In addition, on September 3, 1993, the date of the arrest, Ms. Johnson was in the custody in Indiana so she could not have committed this offense. (See PSI at lines 220-221 & 242-243 indicating that Ms. Johnson was in custody and pled guilty on March, 4 1993 and received 4 years imprisonment).

3. At page 11 lines 269-270 the PO erroneously attributes a September 1976 arrest for possession of narcotic paraphernalia to Ms. Johnson. Again this is an arrest of Diane Tyner, not Ms. Johnson. (See Exhibit C).

4. At page 12 lines 273-274 the PO indicates that on June 16, 1981 probable cause for robbery was found and a bench warrant issued from Hammond, Indiana for Ms. Johnson. This information pertains to Diane Tyner. (See Exhibit C).

5. At page 13 lines 290-291 the PO attributes an August 6, 1995 battery case to Ms. Johnson. Said case belongs to Diane Tyner. (See Exhibit A)(See also Notification of Parole

---

[1]Perhaps the confusion occurred because Ms. Johnson used the alias of Belinda Blount and according to the East Chicago, Indiana Police Department, Diane Tyner's real name was Diane Blount. (See East Chicago, Indiana Police Department criminal history sheet of Diane Tyner attached as Exhibit C).

and Mandatory Supervised Release indicating Ms. Johnson was in custody on August 6, 1995 and not released until May 30 1996 attached as Exhibit F).

      6. At page 13 lines 292-293 the PO ascribes another 1998 battery case to Ms. Johnson. This case was Diane Tyner's, not Ms. Johnson's. (See State of Indiana Docket Entry attached as Exhibit D).

      7. At page 13 lines 294-295 the PO indicates that Ms. Johnson was charged with conversion on March 18, 2000. This charge belongs to Diane Tyner, not Ms. Johnson. (See Exhibit B , C, and also State of Indiana Docket Entry attached as Exhibit E).

The PO's errors result in a decrease in Ms. Johnson's arrests by 6 and her criminal history points by 2. She now has 23 criminal history points.

      b. Finally, at page 10 line 240 the PSI states that Ms. Johnson was released from prison on a forgery offense on November 18, 1995. According to Dupage County documents, Ms. Johnson was released on May 30, 1996 (See Exhibit F). Also the PO indicates at lines 226-227 & 234-235 that Ms. Johnson was released from prison on February 22, 1994 and at lines 256-257 that she was released from prison on November 11, 1995. Although her prison terms for those offenses expired on or about those dates, Ms. Johnson was serving several concurrent sentences in several jurisdictions and was not released until May 30 1996 (See Exhibit F). She was in continuous custody from February 27, 1993 until May 30, 1996 (See Exhibit F & also State of Indiana Presentence Investigation Report Face Sheet attached as Exhibit G).

      3. At page 15 lines 351-357 the PO misstates the information she received from Ms. Johnson. Ms. Johnson stated that she used up to $300 a day of cocaine between 1989 & 1993, not 300 grams a day. Moreover, Ms. Johnson was not using 150 grams a day she was spending

$150 a day on cocaine from 1996 to the present. Also the dates listed as periods of incarceration by the PO are incorrect. Ms. Johnson was incarcerated from 1993-1996, not 1994-1995.

B. ***Upward Departure***

1. The Government's Position Violates the Plea Agreement

The government, in response to the Court's request for counsel to address the question of an upward departure based on the ground that a criminal history category VI does not adequately reflect the seriousness of Ms. Johnson's past criminal conduct or the likelihood that she will commit other similar crimes in the future, filed an extensive sentencing memorandum asking this court to upward depart 4 offense levels. Although Ms. Johnson recognizes this Court's authority to upward depart the government's request clearly violates the plea agreement.

The plea agreement entered into by the parties on or about January 24, 2003 was a negotiated agreement. During negotiations both parties raised various issues with the end result being an agreement reflecting a compromise by both parties. One of the inducements for Ms. Johnson to enter into the agreement was that the government would recommend a sentence within the guideline range. Indeed, that agreement was reduced to writing at paragraph 19 of the plea agreement. It reads: "The government will recommend a sentence within the applicable guideline range." That language is "government language." Its intent is unambiguous and put in the agreement to assure that the government will not seek an upward departure.[2] Consequently, the government's position is in violation of the plea agreement.

---

[2] It is this counsel's personal experience that the United States Attorney's Office in this district uses this language to represent that it will not seek an upward departure. That was clearly its purpose here.



2. An Upward Departure is Unwarranted in this Case

Section 4A.1.3 of the Sentencing Guidelines states that if reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendants' past criminal conduct or the likelihood that the defendant will commit other crimes the court may consider departing from the applicable guideline range. U.S.S.G sec. 4A1.3.

Ms. Johnson has accumulated 23 criminal history points, 10 points higher than the minimal number of points required for a criminal history category VI.[3] At first glance, it may appear that this highest category is insufficient to account for her past criminal conduct; however, an in depth scrutiny of her prior conduct reveals a category VI does reflect the seriousness of her past conduct and also takes into account the likelihood of recidivism.

Twelve of Ms. Johnson's twenty three criminal history points were derived from four offenses whose sentences ran concurrent to one or more of the other offenses and/ or were consolidated for sentencing (See PSI at pages 8-9, lines 204- 235).[4] Nine additional points were

---

[3] On March 3, 2003 when this Court notified the parties that it was contemplating an upward departure it believed Ms. Johnson had 25, not 23 criminal history points and 6 additional arrests, some for serious and violent offenses. After a comprehensive review of the records these mistakes were corrected (See above discussion at pages 1-3).

[4] The following 4 offenses each received 3 points and were either consolidated for sentencing or were run concurrent with each other:

1. 1985 felony theft-withdrawing $2000 from account of another
   5 years imprisonment concurrent with # 2 & 4 below (PSI at page 8 lines 202-212);
2. 1989 auto theft-failure to return rental vehicle
   2 years imprisonment concurrent with #1 above (PSI at page 9 lines 220-227);
3. 1987 theft-no details provided
   18 months imprisonment concurrent with #4 below (PSI at page 8 lines 215-219);
4. 1989 auto theft-failure to return a rental vehicle
   3 years imprisonment concurrent with #1 & 2 above (PSI at page 9 lines 228-235).

derived from three offenses whose sentences ran concurrent to at least one other offense and/or were consolidated for sentencing. (See PSI at pages 10 -11lines 236-257).[5] Thus 21of the 23 points came from 7 offenses.[6]

Two of the seven offenses were auto thefts, unrelated to the current offense of producing a false document; three others, one theft and two retail thefts have no information upon which to derive their seriousness or similarity to the current offense. Moreover, none of her offenses of conviction were violent; and none of them involved large sums of money. The five dissimilar offenses comprise 15 of the 21 criminal history points. The additional 6 points are derived from two forgery convictions that total about a $3700 loss. There is no evidence that Ms. Johnson was not punished for each of her convictions. To the contrary, she was. All of Ms. Johnson's infractions are serious; however, they are not so egregious nor excessive that they significantly underepresent her criminal history or likelihood of recidivism as to warrant an upward departure beyond a category of VI.

---

[5] The following 3 offenses each received 3 points and were either consolidated for sentencing or were run concurrent with each other:

1. 1990 forgery- used a false credit slip to obtain $482.51 from department store
   4 years imprisonment concurrent with # 3 below (PSI at page 10 lines 236-241);
2. 1991 retail theft-no details
   4 years imprisonment concurrent with # 1 above (PSI at page 10 lines 242-246)
3. 1993 forgery- "bad" money order for $3200 of furniture
   4 years imprisonment concurrent with # 1 above (PSI at pages 10-11 lines 250-257).

[6] The additional two points were derived from a 1986 misdemeanor theft and a 1997 misdemeanor attempted theft. No details are available concerning the underlying facts of these cases.

In the event this Court chooses to upward depart, Ms. Johnson requests this court depart no more than two offense levels in accord with *United States v. Lewis*, 954 F.2d 1386, 1396 (7th Cir. 1992)(Lewis had nine points beyond the threshold 13).

Finally, although this Court is not a party to the plea agreement, an upward departure would denigrate the spirit of the agreement between the parties. As stated above at pages 4-5 the government agreed not to upward depart which was an indisputable inducement to plead guilty and concede certain issues in dispute.

WHEREFORE, BELINDA JOHNSON prays this Honorable Court rule in accordance with the requests herein stated.

Respectfully submitted,

Ellen R. Domph

Ellen R. Domph
53 W. Jackson Blvd., #1515
Chicago, IL 60604
312-922-2525